IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Terrainio M. Cunningham, <br><br>     Plaintiff, <br>   v. <br><br> TWC Administration LLC, <br><br>     Defendant. | C/A. No. 3:16-cv-3904-CMC <br><br> **Opinion and Order** |

Through this action, Plaintiff Terrainio Cunningham ("Plaintiff") seeks recovery from his former employer, TWC Administration LLC ("TWC"), for alleged employment discrimination based on race, retaliation, and hostile work environment pursuant to 42 U.S.C. § 2000e, *et seq.*, and a violation of the Family Medical Leave Act (FMLA). ECF. No. 1. The matter is before the court on Defendant's Motion for Summary Judgment, filed March 7, 2018. ECF No. 53. Plaintiff filed his response in opposition on March 30, 2018, after being granted an extension. ECF No. 59. Defendant filed a reply on April 16, 2018. ECF No. 63.

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(g), D.S.C., this matter was referred to United States Magistrate Judge Kaymani D. West for pre-trial proceedings and a Report and Recommendation ("Report"). On November 29, 2018, the Magistrate Judge issued a Report recommending that Defendant's motion for summary judgment be granted. ECF No. 80. The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. Plaintiff filed his objections on December 13, 2018. ECF No. 81. TWC filed a reply on December 27, 2018. ECF No. 82. This matter is now ripe for resolution.

After conducting a *de novo* review as to the objections made, and considering the record, the applicable law, and the Report and Recommendation of the Magistrate Judge, the court agrees with the Report's recommendation that TWC's motion for summary judgment should be granted. Accordingly, the court adopts the Report by reference in this Order. For the reasons stated in the Report and as further addressed below, TWC is entitled to summary judgment on all claims.

**I. Standard**

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). The court reviews only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'") (quoting Fed. R. Civ. P. 72 advisory committee's note).

Summary Judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the district court must "view the evidence in the light most favorable to the nonmoving party." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568 (4th Cir. 2015) (citing *Tolan v. Cotton*, 134 S.Ct. 1861, 1868 (2014) (per curiam)). "Summary Judgment cannot be granted merely because the court believes that the movant will

prevail if the action is tried on the merits." *Id.* Therefore, the court cannot weigh the evidence or make credibility determinations. *Id.* at 569. The district court may not "credit[] the evidence of the party seeking summary judgment and fail[] properly to acknowledge key evidence offered by the party opposing that motion." *Id.* at 570. However, a party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

## II. Discussion

### a. Race Discrimination Claim

#### i. <u>Magistrate Judge's recommendations and Parties' arguments</u>

The Magistrate Judge concluded Plaintiff does not have direct evidence of discrimination and cannot establish his claim for racial discrimination under the burden-shifting method of proof. ECF No. 80 at 14. The Report recommends dismissal of Plaintiff's discrimination claim because he has failed to show his job performance was satisfactory at the time of his termination. *Id.* at 17-18. It also found Plaintiff failed to create an issue of fact as to whether his purported comparator is valid. *Id.* at 19. Regarding Plaintiff's disparate treatment claim involving the investigation of Plaintiff and his team, the Report recommends dismissal as an investigation is not an adverse employment action, and, even if it was, there is no valid comparator. *Id.* at 20-21. The Report concluded even if Plaintiff did establish a prima facie case of discrimination, TWC met its burden of producing legitimate, non-discriminatory reasons for terminating Plaintiff, which Plaintiff was unable to demonstrate were pretext. *Id.* at 23-26.

3

Plaintiff objected to the Report, arguing there are genuine issues of material fact precluding summary judgment. ECF No. 85. Specifically, he objected to the determination he failed to demonstrate race was a motivating factor in his termination, as "[d]eposition testimony has shown the Defendant has demonstrated a pattern of discriminatory treatment towards African Americans by failing to continue to employ them." *Id.* at 3. He contends there are valid comparators who are "in the same job, doing the same things." *Id.* at 4. Finally, he argues TWC should have determined who made the customer complaint leading to the investigation and why the complaint was not "provided to the employees so they could try to figure out what, if anything, had occurred." *Id.*

In its reply to Plaintiff's objections, TWC argues Plaintiff failed to present specific objections, record citations, or applicable case law establishing the Magistrate Judge erred in recommending summary judgment. ECF No. 82. It points out Plaintiff's objections do not challenge the Magistrate Judge's recommendation on the failure to promote, retaliation, hostile work environment, or FMLA claims, and the Magistrate Judge did not commit clear error in recommending summary judgment. *Id.* at 3-4. TWC also argues Plaintiff does not explain how the Magistrate Judge erred regarding his job performance or valid comparators. *Id.* at 5-6. Finally, it notes Plaintiff's "supposed evidentiary concerns regarding a customer complaint were fully and properly addressed by the Magistrate Judge," and should not be overturned based on speculation. *Id.* at 6-7.

    *ii.* <u>Background</u>

From approximately October – December 2015, TWC held a Starz programming incentive, in which representatives would be rewarded for selling Starz programming. ECF No. 53-5 at 23-24 (Plaintiff dep. at 88:22-89:5). Plaintiff's team won this Q4 Starz contest, with two team members, Jessica Williams and Candace Thompson, as the highest sellers. ECF No. 53-3 at 40-

4

41 (Thompson dep. 145:14-146:12). In early December 2015, TWC received a complaint in which a customer complained she was being charged for Starz programming even though the retention representative told her it would be free. ECF No. 53-10 at ¶ 26 (Owen decl.). An investigation followed, which revealed one of Plaintiff's team members, Thompson, was the retention representative who assisted the customer. *Id.* at ¶ 27. Thompson had removed the $8 modem lease fee (charged to customers who rent TWC-owned modems instead of using their own) to offset the Starz fee of the same amount. *Id.* at ¶¶ 28-29; ECF No. 53-3 at 35 (Thompson dep. at 132:9-133:8). In doing so, she fraudulently entered a specific code in the customer's account indicating he or she owned the modem, even though the customer continued to use a TWC-owned modem. ECF No. 53-10 at ¶ 30. Plaintiff's manager, Emma Brown, became involved in analyzing a sample of Thompson's call recordings and in meeting with Thompson, during which Thompson indicated other representatives engaged in similar conduct. *Id.* at ¶¶ 34, 36. Based on her investigation, Brown requested an audit of every customer account in which a Columbia-based retention representative removed a modem lease fee and added a Starz fee during a Q4 Starz competition, which was approved by Owen, the Senior Director of Retention. *Id.* at ¶¶ 37-38. Six retention representatives were identified as swapping out the modem fee for the Starz fee more than four times, and four of these six were on Plaintiff's team. *Id.* at ¶¶ 39-40. The representatives on Plaintiff's team switched out these fees approximately 170 times during the Q4 competition. *Id.* at ¶ 45.

Plaintiff was called into a meeting with Chris Kirkland, in TWC's security department, on January 13, 2016. ECF No. 53-21 at 2 (Cunningham Security Narrative); ECF No. 53-5 at 43 (Plaintiff dep at 121:18-24). In this meeting, Plaintiff stated it was "ok" to switch the modem fee for the Starz fee "as long as the customer keeps their same rate." ECF No. 53-21 at 2 (Cunningham

Security Narrative). He noted he didn't "see the great big sin in all this," and explained it was an "easy move" to save a customer or win a trip. *Id.* He further explained he never questioned his agents because they were "top performers and knew how to sell and talk to customers." *Id.* Plaintiff also admitted he did not go through a full ICOMS[1] training and therefore did not know what to look for regarding unethical actions when auditing his representatives' calls, although he did listen to the calls for quality assurance. *Id.* Plaintiff was suspended with pay for the duration of TWC's investigation. ECF No. 53-5 at 46-47 (Plaintiff dep at 128:23-129:1).

At the conclusion of the investigation, Owen decided to terminate Plaintiff's employment due to "conduct unbecoming of a people leader - integrity." ECF No. 53-10 at ¶ 62; ECF No. 53-22 at 2 (Cunningham Termination Request). Owen based this decision on his review of the investigation materials, which showed 1) Plaintiff's representatives lied to customers and fraudulently removed modem fees on nearly 200 accounts; 2) Plaintiff and his team "flagrantly disregarded TWC's May 2015 express reminder forbidding this very practice"; 3) Plaintiff defended his team's misconduct despite TWC's numerous policies forbidding it; and 4) Plaintiff admitted failing to properly audit his team. ECF No. 53-10 at ¶ 63. Human Resources also recommended the termination.[2] ECF No. 53-6 at 10 (Owen dep. at 12:11-15). Plaintiff received

---

[1] ICOMS appears to be the billing software utilized by TWC.

[2] Human Resources also recommended Thompson, Williams, and Maeitta Scarborough (another representative not on Plaintiff's team) be terminated for this conduct. Falgout dep. at 16:1-8. Ultimately, Thompson, Williams, Eireka Nickson (Plaintiff's team member) and Scarborough were terminated. ECF No. 53-10 at ¶ 64. Christopher Carriere, a white male on Plaintiff's team, and Charanee Stephens, a black female representative not on Plaintiff's team, were suspended with pay but ultimately not terminated as less culpable. *Id.* at ¶¶ 66-67. Alexis Green and Terri Johnson, two additional black female representatives on Plaintiff's team, were not terminated because the investigation did not reveal they engaged in misconduct. *Id.* at ¶ 65.

6

a phone call and a letter in January notifying him of his termination. ECF No. 53-5 at 50 (Plaintiff dep. at 135:13-25).

### iii. Analysis

Although Plaintiff presents general arguments regarding the Magistrate Judge's conclusions, he fails to provide specific record evidence or case law in support of his challenges. Further, the court agrees with the Magistrate Judge that there is no evidence race was a motivating factor, Plaintiff has failed to demonstrate his job performance was satisfactory at the time of his termination, or to provide a valid comparator. Despite Plaintiff's assertions he "was properly supervising his team," he does not dispute he was aware of his team members' conduct of swapping modem fees for Starz fees, and TWC has presented evidence this violated its policies. The members of Plaintiff's team switched out the modem fee for the Starz fee approximately 170 times during the competition. ECF No. 53-10 at ¶ 45. When TWC inquired about his representatives' conduct, Plaintiff essentially stated he never questioned their behavior and did not understand why it was a problem. Further, Plaintiff admitted he was not auditing the customer accounts in ICOMS or identifying unethical activity during the calls, but was able to audit his team members' calls for quality assurance issues.[3] ECF No. 53-22 at 2-3. As auditing customer accounts

---

[3] As a supervisor, Plaintiff was responsible for auditing at least 10% of his team members' calls by both listening to the recording of the call and confirming any changes the representative made to the customer's account in TWC's billing system were disclosed to the customer. ECF No. 53-5 at 14 (Plaintiff dep. at 72:11-73:15); ECF No. 53-10 at ¶ 19. While Plaintiff did listen to calls, he admitted he did not review the customer's account records to confirm any changes were communicated to the customer. ECF No. 53-5 at 12-14 (Plaintiff dep. at 70:12-24, 72:11-73:15). Plaintiff stated he did not receive full ICOMS training; however, he did not make a formal request for this training and did not participate when additional training was afforded to him. ECF No. 53-22 at 2.

Footnote Continued . . .

is part of his supervisory duties, this is further evidence he was not properly performing his job at the time of his termination.

While Plaintiff argued another manager, Ms. Russell, was similarly situated, the court agrees she is not a valid comparator.[4] Ms. Russell is a manager of another team and had similar job duties to Plaintiff. Plaintiff has submitted evidence Russell did not properly audit her team members calls (ECF No. 59-4 at 4, Russell dep. at 15:12-20) and told her team to remove modem fees (ECF No. 59-7 at 3, Landy dep. at 22:16-24). However, there is no evidence members of Russell's team <u>swapped out</u> the modem fees for Starz fees during a competition designed to increase sales of Starz programming; therefore, the precise unethical conduct of Plaintiff's team members is dissimilar. *See* ECF No. 53-16 at 2 (Rules and Regulations for Q4 Starz incentive contest states "[f]raudulent or unethical behavior will not be tolerated and will subject employee to disciplinary action, up to and including termination of employment."). Further, Russell reports to a different supervisor, and the decision-maker regarding Plaintiff's termination was not involved in Russell's discipline.[5] *See Moore v. City of Charlotte, NC,* 754 F.2d 1100, 1105 (4th Cir. 1985) ("The most important variables in the disciplinary context, and the most likely sources of different but nondiscriminatory treatment, are the nature of the offenses committed and the nature of the punishments imposed."); *Hurst v. District of Columbia,* 681 F. App'x 186, 191 (4th Cir. 2017)

---

[4] Plaintiff also refers to Chris Carriere, not as a comparator, but to note Carriere was the only Caucasian on Plaintiff's team and the only member of the team not terminated after the investigation. ECF No. 59 at 9. However, a black female retention representative (Stephens) who removed the modem fee seven times, like Carriere, was suspended but not terminated: receiving the same treatment for the same conduct as Carriere, a white man. ECF No. 60-10, Owens Dec. at ¶ 67.

[5] Russell was issued a "written warning for misconduct when she told her agents to save customers by switching out modem lease fees." ECF No. 59-7 at 3 (Landy dep. 22:12-24).

(citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (showing that similarly situated employees were not treated equally "typically includes evidence that the employees dealt with the same supervisor, were subject to the same standards, and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct.").

Finally, the court agrees the Magistrate Judge sufficiently addressed the argument regarding the customer complaint, and Plaintiff's speculative assertion that it may not have come from a customer at all is insufficient to create a genuine issue of material fact. Further, the court questions the relevance of the source of the complaint. It does not matter how TWC discovered this activity, as the court agrees with the Magistrate Judge that the investigation is not, in itself, an adverse employment action. *See Bonds v. Leavitt*, 629 F.3d 369, 386 (4th Cir. 2011) ("Even if these investigations were improper or substandard, that does little to help [plaintiff] establish that the reasons given for her termination were not the actual reasons, and it certainly does not give rise to a reasonable inference that her race or gender was the real reason for her termination."); *Hux v. City of Newport News*, 451 F.3d 311, 315 (4th Cir. 2006) ("Once an employer has provided a non-discriminatory explanation for its decision, the plaintiff cannot seek to expose that rationale as pretextual by focusing on minor discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly irrelevant to it.").

Therefore, Plaintiff's objections regarding his discrimination claim are overruled and the court agrees with the Magistrate Judge's conclusion regarding this claim. Summary judgment for TWC is appropriate.

  b. *Retaliation, Hostile Work Environment, and FMLA Claims*

The Report recommends summary judgment on the retaliation claim, as Plaintiff effectively conceded he did not complain of racial discrimination to anyone at TWC, and filed his

9

complaint with the Human Affairs Commission after his termination.[6] ECF No. 80 at 27. The Magistrate Judge also recommends dismissal of the hostile work environment claim for failure to exhaust administrative remedies, as his SHAC/EEOC charge does not allege a hostile work environment. *Id.* at 31-32. In the alternative, the Magistrate Judge found Plaintiff's substantive allegations regarding hostile work environment fail to support such a claim. *Id.* at 32-33. Finally, the Magistrate Judge concluded TWC set forth a legitimate, nondiscriminatory reason for Plaintiff's termination, unrelated to his use or potential use of FMLA leave. *Id.* at 36. For many of the same reasons his disparate treatment claim fails, Plaintiff has failed to demonstrate this reason was pretextual. *Id.*

Plaintiff's objections (ECF No. 81) do not address any of these three claims; therefore, review of the Report on these issues is for clear error. Finding none on the retaliation and FMLA claims, the court adopts the Report on these issues. As to the hostile work environment claim, the court finds no clear error in the Magistrate Judge's recommendation to dismiss this claim as the allegations fail to support it.[7] Summary judgment is appropriate, and Plaintiff's retaliation, hostile work environment, and FMLA claims are dismissed with prejudice.

---

[6] Although Plaintiff states in his brief he "filed a complaint with [SHAC] on January 20, 2016, before he was terminated," (ECF No. 59 at 11-12) he has not produced this complaint or any evidence of it. His SHAC charge referencing his termination, produced by TWC with its motion, was signed by Plaintiff on March 18, 2016, after his termination on January 21, 2016. ECF No. 53-5 at 98-99.

[7] The Fourth Circuit recently clarified a claim can be raised for the first time before the district court if the factual allegations are "reasonably related to charges in the original administrative complaint, and if they reasonably could have developed from the agency's investigation of the original complaint." *Stewart v. Iancu*, __ F.3d __, 2019 WL 122868 (4th Cir. 2019). However, as the Magistrate Judge considered the hostile work environment claim on the merits as well as on failure to exhaust (and Plaintiff failed to object to either), this court adopts the Report only on the merits determination and need not reach the failure to exhaust issue.

**III.  Conclusion**

Having conducted a *de novo* review of the Report and underlying motion and related memoranda where necessary, and having fully considered Plaintiff's objections and TWC's response, the court adopts the conclusions of the Report. Defendant's motion for summary judgment is **granted** and this matter is dismissed with prejudice.

**IT IS SO ORDERED**.

s/Cameron McGowan Currie<br>
CAMERON MCGOWAN CURRIE<br>
Senior United States District Judge

Columbia, South Carolina
January 24, 2019